J-S48029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF: J.S.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: R.W. | |
| | No. 255 WDA 2016 |

Appeal from the Order January 22, 2016
in the Court of Common Pleas of Allegheny County,
Orphans' Court, at No(s): CP-02-AP-0000113-2015

BEFORE: BOWES, DUBOW, and MUSMANNO, LL.

MEMORANDUM BY JUDGE DUBOW:                     **FILED JULY 22, 2016**

R.W. ("Mother") appeals from the Order involuntarily terminating her parental rights to J.S.W. ("Child") pursuant to the Adoption Act, 23 Pa.C.S. §§ 2511(a) and (b).[1]  We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

The Orphans' Court's factual findings may be summarized as follows: Child was born in October 2004.  On February 7, 2014, the Allegheny County Office of Children, Youth and Families ("the Agency") received a report that Mother and Child were homeless and Child was truant.  The Agency made contact with Mother two days later.  She advised the Agency's employee that

---

[1] Child's father, although known, never participated in the proceedings.  The Orphans' Court terminated his parental rights via the same decree terminating Mother's parental rights.

she had been diagnosed as having a bipolar disorder and major depression. Although she had taken medications in the past for these conditions, she was no longer taking any medications and not receiving any other type of mental health treatment.

By February 20, 2014, the Agency had implemented in-home services through Family Services in order to address the issues of homelessness and Mother's mental health. Family Resources located housing for Mother and Child, provided furnishings for the residence, and helped to enroll Child in the local school district. Subsequently, Mother failed to attend meetings set up with Family Services personnel. In addition, by late March 2014, the Agency had enlisted the assistance of Community Empowerment Association ("CEA") to assist to resolve Child's extensive truancy problems.

Despite having a Section 8 voucher and sufficient social security income, Mother failed to make rent payments. In May 2014, Mother and Child were evicted from the residence. The Agency then offered Mother referrals to the Urban League and Neighborhood Living Assistance Program to assist once again with housing. Although Mother later obtained housing, she was again evicted for failure to pay rent. Child's truancy problems continued despite CEA's efforts.

On June 10, 2014, Child was removed from Mother's care, and he was placed him with foster parents from the Bair Foundation. After Child was placed in the foster home, he began to regularly attend school. Subsequently, Child was evaluated and prescribed medication for Attention

Deficit Hyperactivity Disorder. Since taking the medication, Child has performed better in school. Following placement, the foster parents had given Mother their phone number in order to contact Child. Mother and Child were permitted to call each other. Initially, such contact occurred once per week. Periodically the foster parents would send Mother text messages and pictures of Child's activities. While Mother initially responded, her participation waned to the point that she would not respond.

On July 23, 2014, the Juvenile Court held a hearing in response to the Agency's dependency petition. Because at that time Mother had failed to obtain housing or treatment for her mental health, Child was adjudicated dependent. As part of its dependency order, Mother was directed to obtain housing and mental health treatment. Additionally, she was to visit with Child twice a week. During the ensuing months, Mother's visits with Child were inconsistent. Mother visited Child once on June 17, 2014, but did not visit with him again until October 2014. On more than one occasion during this time period, Mother would confirm visits but then fail to appear or cancel. According to testimony from an Agency employee, although the Bair Foundation would inform Mother of child's medical appointments, school meetings, and sports activities, she attended none of the events.

The Juvenile Court held five permanency review hearings from October 2014 through October 2015. Mother had not complied with any of her goals and had had very few visits with Child. Additionally, as of April 2015, the Juvenile Court directed Mother to attend a drug and alcohol assessment.

Mother failed to comply. At the conclusion of each review hearing, placement of Child remained with the foster parents.

The Agency filed a petition to terminate parental rights ("TPR petition") on July 10, 2015. The Orphans' Court held an evidentiary hearing on January 22, 2016. ("TPR hearing"). Initially, Mother was not present. At this hearing, a caseworker testified regarding the unsuccessful efforts made to assist Mother. Dr. Eric Bernstein, Psy.D, did not testify at the hearing. His three evaluations, completed in August, October, and December of 2015, however, were stipulated to and entered into evidence.

Although Mother was not present when the hearing began, she appeared after a court recess and testified. At the conclusion of her testimony and argument from counsel, the Orphans' Court terminated Mother's parental rights under 23 Pa.C.S. §§ 2511(a)(2), (5), (8) and (b). This appeal follows. Both Mother and the Orphans' Court have complied with Pa.R.A.P. 1925.

**ISSUE ON APPEAL**

Mother raises the following issue on appeal:

> Did the [Orphans' Court] abuse its discretion and/or err as a matter of law in concluding that [the Agency] met its burden of proving that termination of [Mother's] parental rights would best serve the needs and welfare of [Child] pursuant to 23 Pa.C.S. § 2511(b)?

Mother's Brief at 5.

**LEGAL ANALYSIS**

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result." *Id.* at 827.

We give great deference to the Orphans' Courts that often have first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to

enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

**Termination Pursuant to Section 2511(a)**

Mother concedes that the Agency presented sufficient evidence to terminate her parental rights under this section. *See* Mother's Brief at 12. Thus, we need not discuss Section 2511(a) further.

**Termination Pursuant to Section 2511(b)**

We also agree with the Orphans' Court's determination that the Agency met its burden under 23 Pa.C.S. § 2511(b), and that terminating Mother's parental rights is in the best interest of the Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the Orphans' Court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently

severing that bond.  *Id.*  The extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.  *Id.* at 763.

In the instant case, the Orphans' Court found that, as stated in the evaluations performed by Dr. Bernstein, as well as the testimony of all parties, Mother and Child enjoy a strong bond.  Despite this bond, however, the court concluded that Child's needs outweighed any sadness or temporary emotional challenges that would impact Child in terminating Mother's parental rights.  The Orphans Court explained:

> [Dr.] Bernstein observed Child and Mother interacting, and found that they did so in a largely positive manner— *e.g.*, engaging each other and communicating with one another.  [He] concluded that Child had a strong bond with Mother, but [Dr.] Bernstein then went on to state that he had concerns about Mother's ability to provide consistent care, however respectable her subjective intentions might be.  Along these lines, [Dr.] Bernstein made note of Mother's numerous evictions, inconsistent visitations, and failure to obtain an evaluation from POWER.  [He] likewise opined that, after Child was placed in his foster home, Child showed positive adjustment in all aspects of his life and was thriving.  On this issue, [Dr. Bernstein] concluded that the foster parents offered Child stability, security, and safety.
>
> Dr. Bernstein further noted that Child has an established bond with his foster parents.  He found that they are consistent caregivers who provide Child with a loving home and otherwise meet his needs and welfare.  Moreover, the doctor commented that Child has already struggled with significant change in his young life and that allowing Child to be in a position of experiencing any further instability does not appear to meet his needs and welfare.  Ultimately, [Dr.] Bernstein opined that he supported the termination of Mother's parental rights in favor of adoption.

\*\*\*

    This court appreciates that Child has a bond with Mother and that such a bond is important.  Indeed, the court realizes that terminating Mother's parental rights may cause Child some sadness or other emotional challenges.  At the same time, however, failing to terminate Mother's parental rights would essentially hold Child hostage, keeping him in an uncertain state as to where and with whom he will live permanently.  He needs to get on with his life; this court has to help him do so.

    Moreover, Child already has a positive bond with his foster parents, particularly because those parents are providing for his needs and welfare in ways that Mother has not, will not, and/or cannot.  As Dr. Bernstein noted, Child has struggled with significant change in his young life and allowing Child to experience any further instability would not serve his needs and welfare.  It is time to bring this case to a close rather than to continue exposing Child to the underlying instability and uncertainty that results from Mother's continued involvement, minimal as it may be, in his life.

Orphans' Court Opinion, 3/18/16, at 11-17 (citations omitted).  We agree.

**See T.S.M.**, 71 A.3d at 253 (explaining that "courts must determine whether the trauma caused by breaking the bond is outweighed by the benefit of moving the child toward a permanent home").

    Mother argues that, when addressing Child's needs and welfare under Section 2511(b), the Orphans' Court "focuses on [her] conduct . . . as opposed to the nature of the parent-child relationship between [them] and whether severing the parental bond is in [Child's] best interest."  Mother's Brief at 12.  According to Mother, "the substantive nature of the parent-child bond is minimized in the [Orphans' Court's] analysis which focuses mainly on [her inability to parent]."  **Id.**    Although she acknowledges the

relationship Child has established with his foster parents, she notes Dr. Bernstein's observation that Child has expressed uncertainty about being adopted by them, and notes the expert's statement that Child "has a strong bond [Mother] which needs to be respected." *Id.* at 14.

Moreover, Mother asserts that there is no assurance that she and Child would have continued contact once her parental rights are terminated. She then notes that consideration of an "open adoption is not appropriate or relevant in a termination analysis under section 2511(b)." Mother's Brief at 14 (citing *In re Adoption of G.L.L.*, 124 A.3d 344 (Pa. Super. 2016)). Again citing, *G.L.L.*, Mother states that the Orphans' Court "should give utmost attention to discerning the effect on [Child] of permanently severing the parental bond." *Id.* at 15.

Finally, Mother suggests that "other forms of permanency [short of termination] exist for courts to consider when determining what form of permanency would best serve a child's needs and welfare." *Id.* at 14-15. According to Mother, "[n]o precedent exists which prevents children from living outside of the parental home while at the same time maintaining a relationship with their parents." *Id.* at 15 (citing *In re P.A.B.*, 570 A.2d 522, 528 (Pa. Super. 1990)).

When performing a needs and welfare analysis, Orphans' Courts are permitted to consider the totality of the circumstances. *In re Coast*, 561 A.2d 762, 771 (Pa. Super. 1989) (*en banc*). The mere existence of an emotional bond between parent and child, however, does not preclude the

termination of parental rights. **T.S.M.**, 71 A.3d at 267. Indeed, the bond between parent and child must not be viewed solely from the child's view point; rather, a bilateral relationship must exist which emanates from the parent's willingness to parent appropriately. **In re K.K.R.-S.**, 958 A.2d 529, 534-35 (Pa. Super. 2008). In this manner, Mother's inability to parent remains relevant to consideration of the Child's needs under Section 2511(b).

Moreover, both testimony at the TPR hearing and the contents of Dr. Bernstein's evaluations indicated the detrimental impact that Mother's missed or cancelled visits have on Child. The Orphans' Court rejected Mother's attempts to explain the reasons for her inconsistent visits and her promise to rectify these shortcomings. In fact, the court found that even if Mother were credible, her testimony only reinforced the fact that termination of her parental rights was in Child's best interests:

> Having observed the demeanor of all of the witnesses and a having heard the TPR testimony, the court finds Mother's testimony to be largely not credible. In particular, the court finds that she offered contrived explanations as to why she did not visit Child and did not undergo a [drug and alcohol] assessment. However, assuming *arguendo* that this court were to believe Mother's assertions—*e.g.*, that she had medical appointments; that she sometimes arrived late for visits only to find that [the Agency] had canceled them; that she was never told about Child's medical appointments; that she made phone calls to POWER and [the Agency] to schedule a [drug and alcohol] assessment but did not receive return calls—those assertions (along with the rest of the TPR testimony) merely serve to support this court's conclusion that Mother simply lacks the wherewithal to function as a responsible

- 10 -

adult who can meet the needs and welfare of Child. Mother has had months upon months to satisfy the requirements of this court and she has not done so. Whether through a lack of tenacity or ability, she cannot attend to basic scheduling and other rudimentary life affairs. She cannot be a parent to Child in any effective or meaningful way.

\*\*\*

Based on the foregoing analysis, this court is of the clear conviction, without hesitance, that the evidence in this matter is sufficiently clear, direct, weighty and convincing as to demonstrate that the termination of Mother's parental rights best serves Child's developmental, physical, and emotions needs and welfare [pursuant to] 23 Pa.C.S.A. §2511(b).

Orphans' Court's Opinion, 3/18/16, at 17-18 (citations omitted). We cannot disturb the Orphans' Court's credibility determinations. **In re M.G.**, **supra**.

Mother suggests other options short of termination but does not adequately develop this claim. In fact, Mother's counsel objected to any attempt at the TPR hearing to have the Agency employee testify regarding the foster parents' willingness to preserve Child's relationship with Mother. **See** N.T., 1/22/16, at 35-36.

As noted above, when considering Section 2511(b), a court must consider the totality of the circumstances. **In re Coast**, **supra**. In **In re Adoption of G.L.L.**, **supra**, the agency appealed the Orphans' Court's determination that termination of the mother's parental rights to her then-seven-year-old son was not in the best interests of the child pursuant to Section 2511(b). The agency offered several reasons to reverse the court's

conclusion, including the fact that "an open adoption would meet the needs and welfare" of the child.   *G.L.L.*, 124 A.3d at 346.

In *G.L.L.*, the record established the Mother had made some progress toward her goals, including obtaining housing, initiating mental health treatment again, and consistent visits with her son.   While the expert testimony did not recommend reunification, the expert did recommend continuing the child's relationship with the mother via an open adoption pursuant to 23 Pa.C.S. § 2371.[2]   In rejecting this claim, a panel of this Court, stated that an open adoption provides "no guarantee that [mother and her son] would continue to have contact posttermination [sic]," and noted the guardian *ad litem's* admission at the TPR hearing that "you can't hold it against the foster parents if they decide they do not want to have contact . . . with [the mother] through an open adoption."   *Id.*, at 348 (citation omitted).   It is in this context, that the panel concluded "we do not find that the uncertainty of an open adoption is appropriate or relevant in a termination analysis under section 2511(b)."  *G.L.L.*, *supra*.

Here,   the factual circumstances are much different in that the Orphans' Court found Mother unable to parent—unlike the mother in *G.L.L.*, Mother has not obtained housing or mental health treatment, and her visits

_____

[2] Dr. Bernstein recommended the same arrangement in this case.  *See* Agency's Exhibit 3, 12/22/15, at 6.

- 12 -

with Child have been inconsistent. Also, unlike **G.L.L.**, in which the Agency sought to reverse the Orphans' Court refusal to grant termination under Section 2511(b), this case involves considering the Orphans' Court's determination that termination of Mother's parental rights best serves Child's developmental, physical, and emotional needs, and welfare. Thus, in this factual scenario, when considering the effect of permanently severing the parent-child relationship, evidence of the possibility of post-adoption contact would only serve to reinforce Child's best interests in terminating Mother's parental rights. Nevertheless, even without consideration of such evidence, the record readily supports the Orphans' Court's ruling.

**CONCLUSION**

In sum, our review of the record supports the Orphans' Court's determination that the Agency met its burden of proving by clear and convincing evidence that Mother's parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(b). Accordingly, we affirm.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/22/2016

- 13 -