J-S44038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ADOPTION OF G.L.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  ALLEGHENY COUNTY OFFICE OF CHILDREN, YOUTH AND FAMILIES | |
| | No. 359 WDA 2015 |

Appeal from the Order February 9, 2015
In the Court of Common Pleas of Allegheny  County
Orphans' Court at No(s): TPR 077 of 2014

BEFORE:  LAZARUS, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 25, 2015**

Allegheny County Office of Children, Youth and Families (CYF) appeals from the trial court's order denying CYF's petition to involuntarily terminate the parental rights of S.L.L. (Mother) to her minor child, G.L.L. (Child) (born 6/2008).[1]   The trial court concluded that termination would not serve the needs and welfare of G.L.L. pursuant to 23 Pa.C.S. § 2511(b).[2]  After careful review, we affirm.

_____

[1] G.L.L., through his Guardian *ad litem* (GAL), took the position at trial that Mother's rights should be terminated and filed its own appeal.   However, the GAL has since withdrawn that appeal, finding that the trial court's decision to deny CYF's petition because termination would not serve the needs and welfare of G.L.L. is supported by the record and was not an abuse of discretion.  **See** GAL's Brief, at 9.

[2] The trial court's order denies CYF's petition solely on the grounds that "[t]he Court finds that terminating the rights of the parent does not serve the needs and welfare of the child.[]"  Trial Court Order, 2/9/2015, at 1.
*(Footnote Continued Next Page)*

CYF first became involved with G.L.L. in June 2011 when Mother was in a psychiatric hospital and could not care for him. In August 2011, CYF opened a case as a result of deplorable conditions in Mother's home, including animal feces and bugs throughout the home. CYF provided Mother with family group decision-making services,[3] which eventually transitioned to in-home services, from September 2011 through December 2011. Ultimately, G.L.L. was removed from his home on February 15, 2012, but was returned to Mother's care on February 28, 2102; Mother was provided crisis in-home services. G.L.L. was adjudicated dependent one month later, on March 27, 2012. G.L.L. was removed from the family home for a second time, on April 16, 2012, after CYF received a report of physical abuse perpetrated by Mother. He has not returned to Mother's care.

*(Footnote Continued)* ――――――――――

However, the court makes no determination with regard to findings on section 2511(a). We remind the trial court that in termination matters, it must engage in a bifurcated analysis, *see In re D. W.*, 856 A.2d 1231, 1234 (Pa. Super. 2004), that initially focuses on the conduct of the parent and whether the party seeking termination has proven by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination under section 2511(a). Only *after* determining that the parent's conduct warrants termination of his or her parental rights under section 2511(a) must the court engage in the second part of the analysis, determination of the needs and welfare of the child, under section 2511(b). *C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005).

[3] Family Group Decision Making services describes a variety of practices aimed at working with and engaging children, youth, and families in safety and service planning and decisions. These services are often provided to families where safety concerns exist and prior to children being removed from their homes.

CYF created a family service plan (FSP) for Mother with the following goals: stabilizing her mental health; getting G.L.L. needed preventative health and dental care; obtaining appropriate housing; and maintaining contact and cooperation with family, friends and relatives as support resources for G.L.L. To assist her in completing these goals, CYF provided Mother with parenting classes, referrals for drug and alcohol assessments and providers, and transportation assistance.

On April 29, 2014, CYF filed the instant petition for involuntary termination of Mother's parental rights to G.L.L., citing 23 Pa.C.S. §§ 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b) as the grounds for termination. The trial court held a termination hearing on January 23, 2015, and denied CYF's petition, ultimately concluding that CYF did not prove by clear and convincing evidence that terminating Mother's parental rights would serve the needs and welfare of G.L.L. under section 2511(b). CYF filed this appeal, raising the following issue for our consideration:

> Did the Orphan's Court err as a matter of law and/or abuse its discretion in failing to conclude that CYF met its burden of proving that termination of Birth Mother's parental rights would serve the needs and welfare of the Child pursuant to 23 Pa.C.S. § 2511(b) by clear and convincing evidence?

We note that:

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in

issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

***In re Adoption of S.M.***, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted).  We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law.  ***In re A.R.***, 837 A.2d 560, 563 (Pa. Super. 2003).  Our scope of review is limited to determining whether the trial court's order is supported by competent evidence.  ***Id.***

CYF asserts that it proved, by clear and convincing evidence, that termination of Mother's parental rights would serve the needs and welfare of G.L.L. under section 2511(b).  To support its position, CYF argues that: Mother has made minimal progress with regard to maintaining sobriety and obtaining stable housing since G.L.L. has been out of her care; termination of G.L.L.'s relationship with foster parents would be detrimental to G.L.L.; and that an open adoption would meet the needs and welfare of G.L.L.

Section 2511(b) of the Adoption Act[4] states:

(b)  Other considerations. --The court in terminating the rights of a parent **shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.** The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate

_____

[4] ***See*** 23 Pa.C.S. §§ 2101-2938.

- 4 -

housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b) (emphasis added). Moreover, in *In re K.J.*, 936 A.2d 1128 (Pa. Super. 2007), our Court found that before granting a petition to terminate under section 2511(b), a court must:

[C]arefully consider the intangible dimension of the needs and welfare of a child--the love, comfort, security, and closeness-- entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the children's needs and welfare, **must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.**

*Id.* at 1134 (emphasis added).

CYF's claim that Mother's minimal progress with regard to maintaining sobriety and obtaining stable housing since G.L.L. has been out of her care justifies termination under section 2511(b) is misplaced. A determination of whether the parent's conduct justifies termination of parental rights under section 2511(a) is distinct from and not relevant to a needs and welfare analysis under section 2511(b). *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa. Super. 2006). However, the record establishes that Mother obtained her own housing prior to the termination proceedings and, although Mother's mental health and drug use has caused instability in her life, she

- 5 -

has managed to consistently visit with G.L.L. and has not let these issues affect her interactions with him. N.T. Termination Hearing, 1/23/15, at 31-32. Moreover, Dr. Neil Rosenblum concluded in his report "that Mother has made significant strides and improvement in her overall adjustment . . . [and] no longer presents as being severely depressed[, . . .] has reinitiated mental health treatment . . . and has become much more functional and productive in her behavior and personal adjustment." Psychological Evaluation by Neil D. Rosenblum, Ph.D., 2/5/14, at 13.

Next, CYF claims that termination of Mother's parental rights is supported by the fact that ending G.L.L.'s relationship with foster parents would be detrimental to him. While the security that G.L.L. may have with his foster parents is *a* factor to be considered under section 2511(b), **_see In re N.A.M._**, 33 A.3d 95, 103 (Pa. Super. 2011), one cannot discount the fact that a major aspect of a section 2511(b) analysis is the status of the parent-child bond and the effect that severance of that bond would have on the child. Here, all parties acknowledge that there is a demonstrated bond between Mother and G.L.L. **_See_** N.T. Termination Hearing, 1/23/15, at 86 (CYF attorney states "[c]learly there's a bond between [Mother] and [G.L.L.]"); **_id._** at 29 (expert psychologist testifies that Mother and G.L.L.'s relationship is "meaningful" and she has been a "constant" for him). Dr. Rosenblum, psychologist who conducted several evaluations of G.L.L. and Mother, testified that not only is there a meaningful relationship between Mother and G.L.L., but that G.L.L. "certainly would be harmed" were that

relationship terminated. *Id.* at 29. Specifically, Dr. Rosenblum testified that G.L.L. would feel a loss if Mother's rights were terminated due to the number of years that he lived with her before he was removed from the home and the fact that Mother visits with him twice a week. *Id.* at 30.

On February 5, 2014, Dr. Rosenblum conducted individual evaluations of G.L.L. and Mother, as well as an interactional evaluation of G.L.L. with Mother. Dr. Rosenblum's report indicates that G.L.L. stated Mother (as opposed to foster mother) is his favorite mom because he used to live with her, that he misses Mother, and that he likes seeing her. Psychological Evaluation by Neil D. Rosenblum, Ph.D., 2/5/14, at 4. With regard to his evaluation of Mother, Dr. Rosenblum found that Mother clearly loves her son, visits him on a fairly regular and consistent basis, had made significant changes in her life over the past few months, which included moving into a new home and obtaining a job, and meets with a therapist on a weekly basis to stay calm and positive and effectively deal with her depression. *Id.* at 5.

Dr. Rosenblum made the following observations following his interactional evaluation with G.L.L. and Mother: G.L.L. was pleased to see Mother; Mother was very appropriate in her interactions with G.L.L.; Mother was patient and attentive to G.L.L.; Mother has a nice rapport with G.L.L.; Mother was nurturing with G.L.L.; and G.L.L. wanted to stay longer with Mother at the end of the session. *Id.* at 7.

Dr. Rosenblum opined that termination of Mother's rights would have a negative impact on G.L.L. due to his close attachment to her. While he did

not recommend reunification, he did recommend continuing G.L.L.'s relationship with Mother through open adoption under 23 Pa.C.S.A. § 2731.[5] However, before the parties could effectuate an open adoption, Mother's parental rights would have to be terminated. Instantly, there is no guarantee that Mother and G.L.L. would continue to have contact post-termination. Open adoption is a purely voluntary arrangement requiring the consent of the adoptive parents in order to enter into an agreement with birth relatives for ongoing communication or contact that is in the best interest of the child. *See In re K.H.B.*, 107 A.3d 175, 184 (Pa. Super. 2014) (open adoption statute by its plain language makes agreement optional, and such agreement is plainly not required by section 2511); *see*

_____

[5] The purpose of section 2731 is:

> [T]o provide an option for adoptive parents and birth relatives to enter into a voluntary agreement for ongoing communication or contact that:
>
> > (1) is in the best interest of the child;
> >
> > (2) recognizes the parties' interests and desires for ongoing communication or contact;
> >
> > (3) is appropriate given the role of the parties in the child's life; and
> >
> > (4) is subject to approval by the courts.

23 Pa.C.S.A. § 2731. An agreement under Act 101 "shall be filed with the court that finalizes the adoption of the child[,]" 23 Pa.C.S.A. § 2735(a), [and] "[t]he agreement shall not be legally enforceable unless approved by the court, which the court shall approve when the statutory conditions are satisfied." *Id.* at §§ 2735(b), (c).

*also* N.T. Termination Hearing, 1/23/15, at 93 (guardian *ad litem* admits that "you can't hold it against the foster parents if they decide that they do not want to have contact . . . with [M]other" through an open adoption). Therefore, we do not find that the uncertainty of an open adoption is appropriate or relevant in a termination analysis under section 2511(b).

We note that as an appellate court we cannot re-weigh the evidence or the credibility assessments made by the trial court. Rather,

> [e]ven where the facts could support an opposite result, as is often the case in . . . termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead it must defer to the trial judges so long as the factual findings are supported by the record and the trial court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In the Interest of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

Here, the trial court appropriately gave primary consideration to the "developmental, physical and emotional needs and welfare of [G.L.L.]," 23 Pa.C.S. § 2511(b), and concluded that "the testimony was not so clear and convincing as to persuade the Court to come to a clear conviction in the matter." Trial Court Opinion, 4/8/15, at 9. The court found that the negative impact of keeping G.L.L. in foster care was outweighed by the permanent damage he would sustain were Mother's parental rights terminated. *Compare In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008) (termination under section 2511(b) upheld on appeal where parent-child bond could be severed without detrimental effects on child). *See In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000) (en banc) (court must

consider whether natural parental bond exists between child and parent, and whether termination would destroy existing, necessary and beneficial relationship).

Accordingly, we find the trial court did not abuse its discretion in concluding that termination under section 2511(b) was not in the best interests of G.L.L., *In re A.R.*, *supra*, where "the utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). We, therefore, affirm the trial court's order denying CYF's petition to terminate Mother's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2015