**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: B.K.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.D., BIRTH MOTHER | No. 412 WDA 2016 |

Appeal from the Order February 19, 2016
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): Cp-02-AP-0000140-2015

BEFORE:  PANELLA, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:              **FILED SEPTEMBER 02, 2016**

K.D. (Mother) appeals from the order entered in the Court of Common Pleas of Allegheny County, which involuntarily terminated her parental rights to her minor son, B.K.C. (born November 2011).[1]  After careful review, we affirm.

B.K.C. has resided with S.C. (Paternal Grandmother) since his birth. Initially, Father and Mother also resided in the home with B.K.C.  Allegheny County Children, Youth and Families (CYF) became involved with B.K.C. in December 2013 when B.K.C.'s sibling was born, and both Mother and newborn tested positive for illegal substances.  Paternal Grandmother was awarded custody of B.K.C. in February 2014.  Mother and Father both have a history of drug addiction.  Father regained custody of B.K.C. in September

_____

[1] Father's parental rights to B.K.C. were involuntarily terminated at the same proceeding.  Father, however, is not a party to this appeal.

2014, after he had become sober for a period of time and was living with Paternal Grandmother. Father relapsed, and custody of B.K.C. was returned to Paternal Grandmother. B.K.C. has remained in Paternal Grandmother's custody since January 2015.

CYF developed a family service plan (FSP) for Mother, which involved, among other things, cooperating with CYF, recovering from substance abuse, stabilizing her mental health, and maintaining her relationship with B.K.C.

To address her addiction to heroin, Mother became involved with a methadone maintenance program in August 2013. She attended an outpatient program before being incarcerated briefly. She completed an inpatient treatment program in 2014, after which she relapsed. Mother entered a second inpatient program at Family Links, where she was successful enough to transition to the related outpatient program in September 2015. However, Mother was discharged from the program about two months later because she was unable to attend her group sessions three times per week as required. Mother was also required to appear for urine screens as part of the FSP goal to address her drug addiction. Mother consistently had negative screens from September 2015 to December 2015. Then she had three no-shows, which the agency counted as positive tests.

While Mother was completing the inpatient program at Family Links, her visitation with B.K.C. was fairly consistent. However, following her discharge from the program, Mother has attended scheduled visits

approximately half the time. Mother's visits were reduced to once per week. Mother has occasionally visited B.K.C. at other times that Paternal Grandmother arranged. However, Mother has not progressed beyond supervised visits with B.K.C. Mother's mental health treatment has consisted of one hourly session per month at the methadone clinic since her discharge from Family Links. Mother has also been evaluated on separate occasions by two licensed psychologists, Dr. Lawson Bernstein and Dr. Neil Rosenblum.

CYF filed a petition seeking to involuntarily terminate Mother's parental rights under 23 Pa.C.S. §§ 2511(a)(2), (a)(5) and (b)[2] of the Adoption Act[3]

_____

[2] 23 Pa.C.S. § 2511 provides the following:

> (a) General rule. — The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not

*(Footnote Continued Next Page)*

on September 1, 2015. Following a hearing on February 19, 2016, the court terminated Mother's parental rights to B.K.C., finding grounds for termination existed under both subsections 2511(a)(2) and 2511(a)(5) and that termination was in the best interests of the child under subsection (b).

Mother filed a timely appeal, in which she raises the following issue for our review:

> Did the trial court abuse its discretion and/or err as a matter of law in concluding that Allegheny County Children, Youth and Families met its burden of proving that termination of [b]irth

*(Footnote Continued)* ───────────────────

> remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> . . .
>
> (b) Other considerations. — The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. §§ 2511(a)(2), (a)(5), and (b).

[3] 23 Pa.C.S. §§ 2101-2910.

- 4 -

Mother's parental rights best serve[s] the needs and welfare of the child pursuant to 23 Pa.C.S. § 2511(b)[?]

*Brief of Appellant*, at 5.

In a proceeding involving the involuntary termination of parental rights,

the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). As to our standard of review, "[w]e review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *In re Adoption of G.L.L.*, 124 A.3d 344, 346 (Pa. Super. 2015) (citations omitted).

Here, it is not contested that CYF presented sufficient evidence of grounds for termination of Mother's parental rights to B.K.C under section 2511(a). However, as we noted in *In re K.J.*, 936 A.2d 1129 (Pa. Super. 2007), before granting a petition to terminate parental rights under section 2511(b), a court must:

carefully consider the **intangible** dimension of the needs and welfare of a child—the love, comfort, security, and closeness—

entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*Id.* at 1134. The court must consider "whatever bonds may exist between the children and [parent], as well as the emotional effect that termination will have upon the child[.]" *In re Adoption of A.C.H.*, 803 A.2d 224, 229 (Pa. Super. 2002).

Instantly, the record reveals that B.K.C.'s strongest relationship is with Paternal Grandmother. B.K.C. has lived in Paternal Grandmother's home since he was born. She provides for his needs, including caring for him physically and emotionally and maintaining stable living accommodations. However, both Dr. Bernstein and Dr. Rosenblum were of the opinion that Mother had a bond with B.K.C. despite missing visits and not being in a position to care for B.K.C.

While both psychologists agreed that a bond existed between Mother and B.K.C based on their observations and evaluations of her, they differed over how strong the bond appeared to be and whether termination of her parental rights would be in B.K.C.'s best interest. Dr. Rosenblum testified that although B.K.C. does not rely on Mother to meet his day-to-day needs,

a subsidized permanent legal custodianship (SPLC)[4] would be optimal, since it could preserve the bond between Mother and B.K.C.[5] **See** N.T. Termination Hearing, 2/19/16, at 107, 120.

Dr. Bernstein indicated that "the relationship between grandmother and child was stable and secure and most significant for [B.K.C] at this time in his young age in life. And to compromise that by separating the child from his grandmother could be potentially traumatic." **Id.** at 91. Dr. Bernstein also found Mother to be less engaged with B.K.C. than Dr. Rosenblum had observed. Ultimately, Dr. Bernstein stated that "[he] support[ed] the Court moving forward with the termination of [Mother's] parental rights." **Id.** at 75.

In determining that termination of Mother's parental rights was in B.K.C.'s best interest, the trial court noted that it "judiciously evaluated the bond between Mother and Child and determined that there was no indication that an emotional bond exists to the extent that the termination of parental rights of Mother would cause Child to suffer extreme emotional consequences." Trial Court Opinion, 5/12/16, at 6. **A.C.H.**, **supra**;

_____

[4] SPLC arrangements involve custody of a dependent child being awarded to a custodian who is provided a financial subsidy to care for the child. Parental rights are not terminated.

[5] Mother has four children with four different fathers. Mother's oldest child was adopted by her parents. A maternal uncle and his wife were awarded permanent legal custody of her two other children.

*compare G.L.L.*, *supra* at 349 ("[T]he negative impact of keeping G.L.L. in foster care was outweighed by the permanent damage he would sustain were Mother's parental rights terminated.").

In *G.L.L.*, we upheld the ruling of the lower court that had denied involuntary termination of parental rights based upon its best-interest analysis. There, as here, "we cannot re-weigh the evidence or the credibility assessments made by the trial court." *Id.* at 348. Instantly, the trial court's decision to terminate Mother's parental rights is supported by the record, including the opinion testimony provided by Dr. Bernstein. Accordingly, we discern no error or abuse of discretion on the part of the trial court.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/2/2016