J-S84001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: K.B. A/K/A K.J.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.L.B., MOTHER | No. 1590 EDA 2016 |

Appeal from the Order Entered April 22, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): 51-FN-386995-2009
CP-51-AP-0000299-2016
CP-51-DP-0000155-2014

BEFORE: OLSON, SOLANO and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 23, 2017**

Appellant, C.L.B. (Mother), appeals from the order entered on April 22, 2016, which terminated her parental rights to K.B., a minor born in January 2014. We affirm.

We quote the trial court's summary of the relevant factual and procedural history in this case.

> The child, K.B. was born [i]n January [], 2014.
>
> On January 7, 2014, [the Department of Human Services of the City of Philadelphia (DHS)] received a General Protective Services [report (GPS report)] alleging [Mother] tested positive for cocaine, benzodiazepines and phencyclidine at [K.B.'s] birth[.] [K.B.] tested positive for cocaine at birth. The report was substantiated.
>
> On January 10, 2014, DHS visited [Mother's] home and determined that the condition of the home was inappropriate to care for the child. The home had missing walls and holes in the ceiling. Furthermore, a [portion] of the staircase was missing.

* Former Justice specially assigned to the Superior Court.

On January 17, 2014, the day [K.B.] was to be released from the hospital, DHS obtained an Order of Protective Custody (OPC) for K.B. [Thereafter], [t]he child was placed in foster care.

A shelter care hearing was held on December 27, 2013 before [a hearing master]. [The master] lifted the OPC and ordered the temporary commitment of K.B. to the care and custody of DHS.

On January 28, 2014, an adjudicatory hearing was held before the [trial court]. [The court] adjudicated K.B. dependent and committed him to the care and custody of DHS.

The matter was listed on a regular basis before [various judges] pursuant to [the Juvenile Act, 42 Pa.C.S.A. § 6351], and evaluated for the purpose of determining or reviewing the permanency plan [for K.B.]. [Between January 2014 and April 2016, the court conducted periodic review hearings in this matter.]

[On March 31, 2016, DHS filed a petition to terminate Mother's parental rights to K.B.] On April 22, 2016, a [hearing to terminate Mother's parental rights was held.] The [c]ourt found by clear and convincing evidence that [M]other's parental rights [with respect to] K.B. should be terminated pursuant to [the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b).] Furthermore, the [c]ourt held it was in the best interest of the child that the goal be changed to adoption.

[On May 23, 2016, Mother filed a timely notice of appeal together with a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(a)(2). Mother's timely concise statement challenged the sufficiency of the evidence establishing grounds for involuntary termination of Mother's parental rights, as well as the court's decision to change K.B.'s permanency goal from reunification to adoption. The trial court issued its opinion on June 23, 2016.]

Trial Court Opinion, 6/23/16, at 1-2.

On appeal, Mother asks us to review the following issues:

Whether the trial court's ruling to involuntarily terminate [Mother's] parental rights to her son, K.B., was not supported by

clear and convincing evidence establishing grounds for involuntary termination?

Whether the trial court's decision to change K.B.'s permanency goal from reunification to adoption was not supported by clear and convincing evidence that such decision would best protect the child's needs and welfare?

Mother's Brief at 5.

In her first issue, Mother challenges the sufficiency of the evidence to support the trial court's termination of her parental rights.

In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. Our scope of review is limited to determining whether the trial court's order is supported by competent evidence.

*In re Adoption of G.L.L.*, 124 A.3d 344, 346 (Pa. Super. 2015) (internal quotation marks and citations omitted).

The trial court terminated Mother's parental rights under 23 Pa.C.S.A. §§ 2511(a)(1),(a)(2),(a)(5) and (a)(8), and (b). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380,

384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

We focus our attention on section 2511(a)(2) along with section 2511(b).

Those statutory provisions provide that:

> (a) General rule.-The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \*
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> \* \* \*
>
> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing[,] and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511.

The focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child.  **In re Adoption of C.L.G.**, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).  As this Court explained:

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect[,] or refusal; (2) such incapacity, abuse, neglect[,] or refusal has caused the child to be without essential parental care, control[,] or

subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied. The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (internal quotation marks and citation omitted).

Mother argues that she completed many of her case plan objectives and that she regularly maintained loving and nurturing parental contacts with K.B. Specifically, Mother points out that she: 1) made two-thirds of her scheduled visits with K.B.; 2) offered legitimate reasons for failing to attend scheduled visits that she missed; 3) obtained appropriate housing throughout the proceedings before the trial court; 4) attended random drug screens and tested negative; 5) sustained herself throughout the duration of this case without financial assistance from DHS. Mother's Brief at 17. Mother also notes that DHS' witness conceded that Mother loved her son very much. *See id.* Under these circumstances, Mother asserts that her desire to comply with DHS case objectives, her wish to maintain a parental relationship with her son, and her efforts to seek reunification should overcome the trial court's assessment that clear and convincing evidence demonstrated Mother's continued neglect of her parental responsibilities. We disagree.

A parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340. Moreover, a parent's limited success with services designed to remedy barriers to effective parenting may support termination under § 2511(a)(2). *See In re B.L.W.*, 843 A.2d 380, 385 (Pa. Super. 2004), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Termination of parental rights pursuant to § 2511(a)(2) may be predicated upon either incapacity or refusal to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Contrary to Mother's factual contentions, the trial court made the following findings of fact:

> In the instant case, [Mother] did not complete her Family Service Plan (FSP) objectives. The Community Umbrella Agency (CUA) social worker testified that [Mother's] FSP goals were: 1) to go to the Clinical Evaluation Unit of the [c]ourt for random drug screens; 2) to complete drug and alcohol treatment; 3) to complete mental health treatment; 4) to maintain visits with the child; and, 5) to obtain suitable housing. N.T., 4/22/16, at 41. [Mother] did not comply with the random drug screens. N.T., 4/22/16, at 22. Furthermore, [Mother] did not complete drug and alcohol treatment. N.T., 4/22/16, at 19-21. Moreover, [Mother] did not complete mental health treatment. N.T., 4/22/16, at 23. Lastly, [Mother] was not consistent with her visits with the child. She attended [14] out of [21] visits. N.T., 4/22/16, at 24.

Trial Court Opinion, 6/23/16, at 3. Since the assessments of the trial court find support in the record, we discern no abuse of discretion in the court's conclusion that termination was appropriate under § 2511(a)(2).

Having determined that the agency established § 2511(a)(2) by clear and convincing evidence, we next turn to whether section 2511(b) was satisfied by clear and convincing evidence.

> If the grounds for termination under [section 2511(a)] are met, a court shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability. [Our Supreme Court has] held that the determination of the child's needs and welfare requires consideration of the emotional bonds between the parent and child. The utmost attention should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (internal quotation marks and citations omitted).

Mother argues that the trial court failed "to give primary consideration to the developmental, physical, and emotional needs and welfare of the child as required by the Adoption Act, 23 Pa.C.S.A. § 2511(b), to support termination[.]" Mother's Brief at 23. Again, we disagree.

We are guided by the following principles in assessing the termination of parental rights under § 2511(b).

> Before granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. *In re Matsock*, 611 A.2d

737, 747 (Pa. super. 1992). "Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful." **In re William L.**, 383 A.2d 1228, 1241 (Pa. 1978). The trial court, "in considering what situation would best serve the [child's] needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural [parent's] rights would destroy something in existence that is necessary and beneficial." **In re P.A.B.**, 570 A.2d 522, 525–26 (Pa. Super. 1990), *appeal dismissed*, 607 A.2d 1074 (Pa. 1992).

**In re C.S.**, 761 A.2d 1197, 1202 (Pa. Super. 2000).

There was ample evidence in this case to support the trial court's conclusion that termination of Mother's parental rights was in the best interest of K.B. under § 2511(b). The trial court's bonding analysis was as follows:

> In the instant matter, the DHS social worker testified that the child is bonded with his foster mother. The child is very comfortable in the foster home. The interaction between the foster mother and the child is very "maternal and loving." N.T., 4/22/16, at 28. The foster mother takes care of all of the child's daily needs. N.T., 4/22/16, at 28. The CUA social worker also testified that the child is bonded with the foster mother. He further testified that the child does not share the same parent-child bond with [Mother]. N.T., 4/22/16, at 45. The testimony indicated that the child would not suffer long-term harm if [Mother's] rights were terminated. N.T., 4/22/16, at 16. Furthermore, it would be in the best interest of the child if [Mother's] parental rights were terminated and the child is freed for adoption. N.T., 4/22/16, at 29 and 45.
>
> Lastly, the [trial c]ourt found that [Mother's] testimony was not credible. N.T., 4/22/16, at 64.

Trial Court Opinion, 5/23/16, at 5.

Our review of the certified record confirms support for the trial court's determination that clear and convincing evidence supported the agency

- 8 -

petition for involuntary termination under § 2511(a)(2) and (b).[1] Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/2017

---

[1] Our disposition of Appellant's first claim moots the second issue raised in this appeal.