J-S84028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1234 MDA 2017 |

Appeal from the Decree July 11, 2017
In the Court of Common Pleas of Berks County Orphans' Court at No(s): 85404

| | | |
|---|---|---|
| IN THE INTEREST OF: I.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1268 MDA 2017 |

Appeal from the Decree July 11, 2017
In the Court of Common Pleas of Berks County Orphans' Court at No(s): 85405

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1269 MDA 2017 |

Appeal from the Decree July 11, 2017
In the Court of Common Pleas of Berks County Orphans' Court at No(s): 85406

| | | |
|---|---|---|
| IN THE INTEREST OF: L.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-S84028-17

|  |  |  |
|---|---|---|
| APPEAL OF: L.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1270 MDA 2017 |

Appeal from the Decree July 11, 2017
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
85407,
DP-223-12

|  |  |  |
|---|---|---|
| IN THE INTEREST OF: D.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1271 MDA 2017 |

Appeal from the Decree July 11, 2017
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
85408

|  |  |  |
|---|---|---|
| IN THE INTEREST OF: L.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1272 MDA 2017 |

Appeal from the Decree July 11, 2017
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
85409

|  |  |  |
|---|---|---|
| IN THE INTEREST OF: J.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.M., MOTHER | : | |

- 2 -

J-S84028-17

:
:
:
:
:    No. 1273 MDA 2017

Appeal from the Decree July 11, 2017
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
85410

| | | |
|---|---|---|
| IN THE INTEREST OF: D.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | :    No. 1274 MDA 2017 |

Appeal from the Decree July 11, 2017
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
85411

| | | |
|---|---|---|
| IN THE INTEREST OF: L.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | :    No. 1275 MDA 2017 |

Appeal from the Decree July 11, 2017
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
85412,
DP-447-15

BEFORE:  SHOGAN, J., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:          **FILED JANUARY 26, 2018**

L.M. ("Mother") appeals from the trial court's decrees involuntarily terminating her parental rights to her nine minor children, D.M.M. (born 6/05),

- 3 -

I.M.M. (born 6/06), A.M.M. (born 5/07), L.M.M. (born 4/09), D.M. (born 1/11), L.M.M. (born 12/11), J.M.M. (born 2/13), D.M.M. (born 9/14), and L.M. (born 10/15) (collectively "Children").[1]  After careful review, we affirm.

On December 15, 2015, Berks County Children and Youth Services (CYS) petitioned for emergency custody of Children due to concerns about their health and developmental limitations.  CYS first became involved with Mother in July 2006 amidst allegations of lack of basic needs for Children, parents' drug and alcohol use, inappropriate parenting skills, inappropriate physical discipline, unsuitable housing, lack of parental supervision, domestic violence between Mother and Father,[2] and medical neglect.[3]  Mother tested positive for benzodiazepine and marijuana upon the birth of L.M.  Children were adjudicated dependent on December 23, 2015, and placed in temporary custody of CYS.

_____

[1] Due to the divided interests of several of Children regarding placement, two separate attorneys were hired to represent Children's legal interests.  **See** N.T. Termination Hearing, 6/26/17, at 32*.*  **See** 23 Pa.C.S. § 2313(a) (requiring appointment of counsel who serves child's legal interests in contested, involuntary termination of parental rights proceedings).  **See also In re Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017) (highlighting fact that in termination of parental rights cases, law acknowledges two separate and distinct categories of interests:  child's legal interests, which are synonymous with child's preferred outcome, and child's best interests, which trial court must determine and which is guided by statutes and rules).

[2] Father's parental rights to Children were also involuntarily terminated.  He is not a party to this appeal.

[3] In July 2015, a bench warrant was issued for Mother after she failed to appear for a dependency hearing.  N.T. Termination Hearing, 7/10/17, at 15.

As part of her family service plan (FSP), Mother was ordered to cooperate with parenting education, obtain domestic violence, drug and alcohol, and mental health evaluations and comply with any recommended treatments, random urinalysis, casework sessions, obtain and maintain stable housing and income, keep CYS informed regarding any changes in residence or income, and act appropriately during visitation with Children. Caseworkers who were present during Mother's supervised visits with Children described her as disrespectful, defiant, and someone who blatantly refused to follow routines recommended during the visits.[4] N.T. Termination Hearing, 6/26/17, at 16. On September 15, 2016, CYS moved to have Mother's visits with three of her children suspended due to her negative behaviors. After a hearing, the court suspended Mother's visitation with regard to all nine Children. Mother's last contact with Children was in October 2016.

On March 28, 2017, CYS filed petitions to involuntarily terminate Mother's parental rights to Children pursuant to sections 2511(a)(1), (2), (5), (8),[5] and (b) of the Adoption Act.[6] After hearings held on June 26, 2017, and

---

[4] The police were called to one of the supervised visits after Mother had threatened one of the caseworkers with physical harm. N.T. Termination Hearing, 6/26/17, at 54.

[5] We note that "[w]ith respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b).

[6] 23 Pa.C.S. §§ 2101-2910.

July 10, 2017, the court entered final decrees involuntarily terminating Mother's parental rights to Children. Mother filed a timely notice of appeal, raising the following issues for our consideration:

> (1) The trial court erred in involuntarily terminating the Mother's parental rights where it was not supported by clear and convincing evidence when the Mother completed a substantial portion of her family service plan goals.
>
> (2) The trial court erred in involuntarily terminating the Mother's parental rights where the Mother had consistently visited her children and there was a bond between the Mother and Children and termination of parental rights could have a negative effect on the developmental, physical and emotional needs of the children and where some of the children expressed the desire to return home to the care of Mother.

Appellant's Brief, at 5 (renumbered for ease of disposition).

In her first issue, Mother argues that termination was improper where she completed a substantial portion of her FSP goals. Specifically, she claims that termination under section 2511(a) was in error where she participated in parenting classes and mental health treatment and obtained appropriate housing and financial support for Children.

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

- 6 -

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted).

The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326 (Pa. Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. Furthermore, under section 2511(a)(2), the petition for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the cause of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In Interest of Lilley*, 719 A.2d 327, 330 (Pa. Super. 1998).

Based on the record, CYS proved by clear and convincing evidence that Mother repeatedly and continually refused to perform her parental duties, that this refusal caused Children to be without essential care, control or subsistence, and that she is incapable of remedying this situation. Here, Mother poorly attended treatment that was part of her FSP, stopped attending random urinalysis, minimally progressed with treatments, behaved in such a belligerent and violent manner that caseworkers were unable to provide her parenting instruction, made supervised visits with Children almost impossibly

difficult, was barred from family service organizations due to her threatening behavior, and caused her visitation with Children to be suspended as a result of her aggressive and undermining behavior.

Moreover, professionals opined that Mother is not capable of providing for her needy Children due to her erratic behaviors and severe mental health issues (depression, anxiety, and anger/rage). Mother's lack of parenting has had such deleterious effects on Children that a CYS caseworker testified Children will need services until they are 18 years of age, if not further in life; Children were so far behind in everyday life skills when they were placed in CYS' custody that some children were afraid of water and bathing, and one did not even recognize her own name. N.T. Termination Hearing, 6/26/17, at 66. When Children were in Mother and Father's care there were truancy issues, missed medical appointments and a lack of basic provisions for some children. *Id.* at 66-67 ("I don't think there was bedding for everyone."); N.T. Termination Hearing 7/10/17, at 124 ("We [were]n't even able to find a jacket [for each child]."); *id.* at 131 ("[T]hey did not have shoes and socks. All of the children.").

In sum, Mother has simply ignored her Children's basic, let alone special, needs. She is a master at placing blame on others and is incapable of recognizing the harmful affects her behaviors have upon Children. Accordingly, the trial court properly determined that Mother's rights should be

terminated under section 2511(a)(2),[7] where she is unable to meet Children's needs in a safe, healthy manner. *See In re Adoption of M.A.B.*, 166 A.3d 434 (Pa. Super. 2017).

Mother next contends that the court improperly terminated her parental rights under section 2511(b) where there was a demonstrated bond between her and Children, where she deeply loved her children, and where severing the parent-child bond would have a negative effect on Children emotionally, developmentally and physically.

Testimony established that Mother does have a bond with three of her children. However, even where there is a demonstrated parent-child bond, a trial court is obligated under section 2511(b) to "consider the developmental, physical and emotional needs and welfare of" the Children. 23 Pa.C.S. § 2511(b).

In *In re M.A.B.*, *supra*, our Court stated:

Section 2511(b) requires the Orphans' Court to consider "[i]ntangibles such as love, comfort, security, and stability . . . when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *In re C.P.*, 901 A.2d [516,] 520 [(Pa. Super. 2006)]. *See also In re T.S.M.,* [] 71 A.3d 251, 267 (Pa. 2013) (same); *In re Adoption of G.L.L.*, [] 124 A.3d 344, 349 (Pa.

_____

[7] In its Pa.R.A.P. 1925(a) opinion, the trial court states that "the grounds for terminating parental rights under Section 2511(a)(2) [have been met[.]" Trial Court Opinion, 8/11/17, at 14-15. While the court also terminated parental rights under sections (1), (5), and (8), we can affirm the trial court's decision regarding the termination of parental rights with regard to any singular subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

Super. 2015) (noting that . . . Orphans' court must analyze whether . . . relationship with . . . parents is "necessary and beneficial.") (citation omitted). The extent of the bond-effect analysis necessarily depends upon the unique facts and circumstances of the particular case. *In re K.Z.S.*, 946 A.2d [753,] 763 [(Pa. Super. 2008)].

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. **The mere existence of an emotional bond does not preclude the termination of parental rights. Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship."** *In re Adoption of T.B.B*., [] 835 A.2d 387, 397 (Pa. Super. 2003). . . . In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court [has] stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d at 103 (some citations and quotation marks omitted).

*In re Adoption of M.A.B.*, 166 A.3d at 448 (headnotes omitted) (emphasis added).

Instantly, the trial court concluded that terminating Mother's parental rights under section 2511(b) "would have no detrimental effect on any of her children. Life for her children, while in Mother's care, could be summed up in one word, 'chaos.'" Trial Court Opinion, 8/30/17, at 16; *see* N.T. Termination Hearing, 6/26/17, at 67 (caseworker testifying that there would be no detriment to Children if parental rights were terminated). Mother's bond with

her oldest child, D.M.M., is merely protective in nature; there was no evidence showing that the parent-child bond was healthy. *Id.* Mother's bond with her next oldest child, I.M.M., is unhealthy; he is comfortable with his foster parents who meet his special needs. *Id.* at 17. In sum, the caseworkers' overall testimony evidenced the fact that all Children are making substantial emotional, developmental and educational progress with their foster parents. Most of the Children have special needs, ranging from autism/severe developmental delays and bipolar disorder to extreme anger issues, which are being addressed by their foster parents. Foster parents have developed a secure, healthy bond with Children.

Based upon the evidence at the termination hearings, it is evident that any demonstrated bond between Mother and Children is not beneficial. *M.A.B.*, *supra*. In fact, it is detrimental and toxic to their development. As the trial court noted, this case "presented some of the most challenging circumstances [it has] seen." *Id.* at 20. One of the attorneys appointed to represent Children noted that they were in "horrible shape." *Id.* "While three of [Mother's] older children may miss Mother, severing this unhealthy bond will not only *not* be detrimental, it will be the first step on the path to a normal childhood for each of them." *Id.* To obstruct this path would be an abuse of our discretion.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/26/2018