J-S09001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: F.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2344 EDA 2021 |

Appeal from the Order Entered October 28, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000245-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: M.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: F.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2345 EDA 2021 |

Appeal from the Order Entered October 28, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000025-2021

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                          **FILED MAY 6, 2022**

F.T. (Father) appeals from the orders, entered in the Court of Common

Pleas of Philadelphia County, Juvenile Division, granting the Philadelphia

Department of Human Services' (DHS) petition to involuntarily terminate his

_____

[*] Former Justice specially assigned to the Superior Court.

parental rights to his minor child, M.T. (Child), born April 2013, and changing the placement goal to adoption.[1]  After careful review, we affirm.

DHS first became involved with Child on December 24, 2017, when it received a General Protective Services' report alleging that S.T., Child's mother (Mother) had been under the influence of drugs since the prior day.[2] On February 9, 2018, the court held an adjudicatory hearing.  The court deferred adjudication but obtained an Order of Protective Custody (OPC) for Child.  On March 28, 2018, the court adjudicated Child dependent and placed Child in the custody of DHS.

Father was arrested on April 23, 2015, in Jefferson County, Kentucky, when Child was 16 months old.  He was convicted of first-degree robbery and is currently serving a ten-year term of incarceration, with a maximum release date of April 22, 2025.[3]  On March 19, 2018, DHS established a Single Case Plan (SCP) for Father, which included the following objectives: (1) compliance with Community Umbrella Agency (CUA) services and court orders; (2)

_____

[1] On December 10, 2021, this Court consolidated the adoption and dependency docket numbers for purposes of appeal.  **See** Order, 12/10/21. **See also** Pa.R.A.P. 513 (consolidation of multiple appeals).  We also note that in his brief on appeal, Father makes no challenge or argument to the change of goal order.  As such, any related claims are waived, and that order is affirmed.

[2] On October 28, 2021, the trial court accepted S.T.'s (Mother) voluntary relinquishment of her parental rights to Child.   Mother did not appeal the trial court's order and she is not a party to this appeal.

[3] N.T. Termination Hearing, 10/28/21, at 6; DHS Exhibit #2-A (Kentucky Online Offender Lookup).

participation in supervised, weekly phone calls with Child; and (3) participation in any programs available through the prison system. N.T. Termination Hearing, 10/28/21, at 19; DHS Exhibits 1-3. Eboni Parks, a caseworker at CUA, explained that CUA created and funded a phone account for Father to enable him to participate in weekly phone calls with Child. ***Id.*** at 20. An email account was created for Father. ***Id.*** at 22. Additionally, Caseworker Parks explained that, while incarcerated, Father completed a parenting program, a substance abuse program, and an anger management program. ***Id***. at 40.

From December 2019 to October 2021, Father called Child six times, each call lasting under 30 minutes. ***Id.*** at 26. During these phone calls, Child needed "to be reminded of who she [was] speaking to." ***Id.*** Additionally, during that time, Father sent one e-mail to Child, dated April 25, 2020. ***Id.*** Father testified that he had not sent any e-mails because the JPay[4] was not set up for him. ***Id.*** at 22-23.

Child was placed in her foster home in April 2018. ***Id.*** at 31. By the time of the termination hearing on October 28, 2021, Child, then 8 years-old, had been in foster care for three years and eight months. ***Id.*** at 18.

_____

[4] JPay enables individuals who are incarcerated to have access to email and telephone services. It also allows for money transfers. ***See*** https://jpay.com (last visited 4/20/22).

Following the hearing, the court terminated Father's parental rights to Child under sections 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act.[5] Father filed a timely notice of appeal and Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following issues for our consideration:

1. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights[,] where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8).

2. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights without giving primary consideration to the effect that termination would have on the developmental, physical[,] and emotional needs of the [C]hild as required by the Adoption Act, 23 Pa.C.S.A. § 2511(b).

Appellant's Brief, at 8.

In a proceeding to involuntarily terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of the grounds for doing so. *In re Adoption of G.L.L.,* 124 A.3d 344, 346 (Pa. Super. 2015); *In re Adoption of S.M.,* 816 A.2d 117, 1122 (Pa. Super. 2003). Clear and convincing evidence is defined as testimony that is so "clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* A court examines whether the totality of the

---

[5] 23 Pa.C.S.A. §§ §§ 2101-2938.

circumstances, including the individual circumstances of each case and all explanations offered by the parents, clearly warrants termination. *Id.* We review a trial court's decision regarding involuntary termination of parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to whether the trial court's order is supported by competent evidence. *Id.*

Although Father appeals the termination of his parent rights under sections 2511(a)(1), (2), (5) and (8), the trial court terminated Father's rights under only under sections 2511(a)(1) and (2). Additionally, satisfying only one subsection of section 2511(a) is sufficient for termination. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). As such, we will only discuss Father's appeal of the termination order under section 2511(a)(2).

The relevant subsections of section 2511[6] of the Adoption Act are as follows:

> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> * * *

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

---

[6] 23 Pa.C.S.A. § 2511(a) (Grounds for involuntary termination); 23 Pa.C.S.A. § 2511(b) (Other considerations).

* * *

(b) The court in terminating the rights of a parent shall give primary consideration to the developmental, physical[,] and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing[,] and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(2) and (b).

Additionally, a determination of whether the parent's conduct justified termination of parental rights under section 2511(a) is not relevant to a needs and welfare analysis under section 2511(b). *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa. Super. 2006). The focus in terminating parental rights under section 2511(a) is on the parent, but under section 2511(b), it is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (en banc). Moreover, a court only proceeds to section 2511(b) if it is first determined that the parent's conduct warrants termination of his or her parental rights pursuant to section 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007).

Under section 2511(a)(2), Father argues that DHS has not established that the causes of incapacity will not be remedied. Specifically, Father asserts that past incapacity alone is not a sufficient basis for involuntary termination and there must be evidence of a parent's present incapacity. Appellant's Brief, at 16 (citing *In Re Adoption of A.N.D.*, 520 A.2d 31, 35 (1986)). We agree

- 6 -

with the trial court's determination that DHS proved, by clear and convincing evidence, that Father cannot or will not remedy the causes of incapacity.

Under section 2511(a), "[a] parent's absence and/or failure to support due to incarceration is not conclusive on the issue of abandonment." *In re Adoption of McCray*, 331 A.2d 652, 655 (Pa. 1975).  However, our Supreme Court has also stated, "[T]he length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to [section] 2511(a)(2)." *In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012).  Here, DHS has demonstrated that Father's present incapacity will not be remedied where his minimum release date from prison is October 23, 2023 and his maximum released date is April 22, 2025.  DHS Exhibit #2-A, *supra.*

Additionally, during incarceration Father's contact with Child was inconsistent.  Although weekly phone calls were part of the SCP, Father spoke to Child on the phone a total of six times between December 2019 and October 2021, each call lasting 30 minutes or less.  N.T. Termination Hearing, *supra* at 20.  Additionally, Father forwarded only one email to Child during this same 22-month period.  *Id*. at 38.  Importantly, CUA provided Father with a funded telephone and set up an email account for him to enable him to contact Child. *Id.* at 21-22.  Despite this, Father did not utilize the resources at his command and, consequently, did not maintain a consistent and close relationship with Child.

Next, we consider whether the trial court abused its discretion by concluding that the needs and welfare of Child would be served by terminating Father's parental rights pursuant to section 2511(b). **See Adoption of C.L.G.**, **supra**. Father argues that DHS failed to show that a bond does not exist between him and Child. Appellant's Brief, at 18. Specifically, Father argues there is a bond because he enjoyed the contact with his Child, but due to his incarceration and COVID-19, more consistent phone calls were not readily available. **Id.** This argument is meritless.

When considering a child's needs and welfare, the court must examine the status of the natural bond to determine whether terminating a natural parent's rights would destroy something in existence that is necessary and beneficial. **In re Interest of C.S.,** 761 A.2d 1197, 1202 (Pa. Super. 2000). Additionally, "in cases where there is no evidence of a bond between the parent and the child, is it reasonable to infer that no bond exists." **In the Interest of K.Z.S.,** 946 A.2d 753 (Pa. Super. 2008).

Here, Caseworker Parks testified that, "Outside of CUA introducing [F]ather to [Child], [Child] . . . had no knowledge of her father." N.T. Termination Hearing, **supra** at 27. Additionally, Father has been incarcerated in Kentucky since Child was 16 months old, and Father will not be released from prison until she is almost ten. **Id.** at 35. Moreover, Child did not ask for further contact with Father. **Id.** Additionally, during phone calls, Child needed "to be reminded of who she [was] speaking to." **Id.** at 26. From these circumstances, the trial court could properly infer that no bond between

Father and Child exists. The evidence of record supports the trial court's determination that termination of Father's parental rights is in Child's best interests, and that Child would not suffer any harm from termination of Father's rights. Thus, we will not disturb the trial court's decision. ***In re S.P.***, ***supra***.

In summary, DHS proved by clear and convincing evidence that Father's conduct fell within section 2511(a)(2). ***G.L.L.***, ***supra.*** Additionally, a section 2511(b) analysis demonstrates that there is no parental bond between Father and Child. ***C.S.***, ***supra.*** The record supports the trial court's findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. ***In re A.R.***, ***supra***. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2022