J-A01027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.M.B., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: B.C.C.Y.S. | : : : : : : | |
| | : | No. 1139 MDA 2021 |

Appeal from the Decree Entered August 17, 2021
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
87546

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D.B. | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.C.C.Y.S. | : : : : : : : | |
| | : | No. 1140 MDA 2021 |

Appeal from the Decree Entered August 17, 2021
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
87547

BEFORE:  LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY LAZARUS, J.:          **FILED: MAY 13, 2022**

Berks County Children Youth Services (BCCYS) appeals from the Orphans' Court's decrees[1] denying BCCYS' petition to involuntarily terminate the parental rights of M.W. (Mother) and C.B. (Father) to their twin children,

---

[1] Docket numbers 1139 MDA 2021 and 1140 MDA 2021 have been consolidated *sua sponte* by this Court.  **See** Pa.R.A.P. 513, 2138.

A.D.B. and C.M.B (Children) (born March 2019). After careful review, we affirm.[2]

On October 23, 2019, Mother brought C.M.B. to the emergency room at Reading Hospital. An x-ray showed that C.M.B. had a displaced femur fracture to the left leg. Hospital employees, concerned this was a non-accidental trauma, admitted C.M.B. for overnight observation and contacted BBCYS. A.D.B. was also admitted overnight for observation because Mother "want[ed] him seen to make sure that [he was] healthy and that nothing [was] wrong with him." N.T. Termination Hearing, 8/9/21, at 257; Exhibit 7. An x-ray showed that A.D.B.'s right leg had a distal femur metaphyseal fracture.

On October 24, 2019, BCCYS petitioned for, and was granted, emergency custody of the Children. On October 28, 2019, BCCYS filed dependency petitions on behalf of the Children. On February 5-6, 2020, the Children were adjudged dependent and temporary legal custody was transferred to BCCYS for placement. BCCYS' goal was to return the Children to the most appropriate parent, with a concurrent goal of adoption. At the hearing, both Mother and Father were ordered to: (1) participate in Casework

_____

[2] When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if they are supported in the record. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). If the record supports the factual findings, this Court reviews for an error of law or abuse of discretion. *Id.* We emphasize that the trial court was in the best position to view the evidence and we give great deference to the trial court's determinations that are supported in the record. Our job as an appellate court is to review for an abuse of discretion, not to reweigh the evidence. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Services through BCCYS and follow any recommendations; (2) undergo a mental health evaluation and follow any recommendations; (3) complete a drug and alcohol evaluation and follow any recommendations; (4) engage in random urinalysis; (5) establish and maintain stable and appropriate housing and income; (6) keep BCCYS informed of any change in residence or income; (7) sign releases of information as requested; (8) engage in supervised visitation and interact with Children in an appropriate manner; and (9) engage in parent education. N.T. Termination Hearing, 8/9/21, at 275-282 (Exhibits 11 and 12).

On February 24, 2020, Children were found to be the victims of abuse as defined by 23 Pa.C.S. § 6303. Additionally, Mother and Father failed to rebut the presumption of abuse set forth in 23 Pa.C.S. § 6381(d), relating to *prima facie* evidence of abuse by a child's caretakers. Father appealed this determination. Importantly, on appeal, this Court agreed that the statutory scheme identified Father as a perpetrator of abuse but acknowledged that the trial court did not make a factual determination that Father was the actual abuser. **See** Memorandum Opinion of Judge Mary Ann Ullman, 4/16/2 at 9, aff'd **In the Interest of A.B. and C.B.**, 240 A.3d 937 (Pa. Super. 2020). Additionally, although Mother did not appeal the order that she was the perpetrator of abuse, no factual determination was made whether Mother was the actual abuser. Trial Court Opinion, 9/30/21, at 13.

On August 9, 2021, the court denied BCCYS' petitions to involuntary terminate the parental rights of Mother and Father. The trial court ultimately

concluded that BCCYS did not prove by clear and convincing evidence that Mother's or Father's conduct fell within any subsection of 23 Pa.C.S. § 2511(a) of the Adoption Act.[3] BCCYS filed this appeal, raising the following issues for our consideration:

1. Did the trial court err in failing to grant BCCYS' petition for involuntary termination of parental rights with respect to Father, under 23 Pa.C.S. §§ 2511(a)(1), (2), (5) and (8)[,] when clear and convincing evidence was presented that Father never completed offending parent treatment after being named as a founded perpetrator of abuse, did not demonstrate consistent parenting during visitation, never successfully completed casework, failed to acknowledge abuse of [C]hildren, and overall never remediated circumstances which gave rise to dependency?

2. Did the trial court err in failing to grant BCCYS' petition for involuntary termination of parental rights with respect to Mother, under 23 Pa.C.S. §§ 2511(a)(1), (2), (5) and (8)[,] when clear and convincing evidence was presented that Mother never completed offending parent treatment after being named as a founded perpetrator of abuse, did not demonstrate consistent parenting during visitation, never successfully completed casework, failed to acknowledge abuse of [C]hildren, and overall never remediated circumstances which gave rise to dependency?

3. Did the trial court err by failing to give primary consideration to the developmental, physical[,] and emotional needs and welfare of the [C]hildren, pursuant to 23 Pa.C.S. § 2511(b)?

4. Did the trial court err by failing to allow Robert Frankel, Esquire, Children's Guardian *Ad Litem* (GAL) and legal counsel, to advocate for the Children's preferred outcome or wishes regarding the termination petition, should they be ascertainable, under 23 Pa.C.S. § 2313(a), [and by not inquiring] of or permit[ting] Attorney Frankel to advocate for the Children's best interests?

Appellant's Brief, at 3-4.

_____

[3] 23 Pa.C.S. §§ 2101-2938.

In a proceeding to involuntarily terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of the grounds for doing so. *In re Adoption of G.L.L.,* 124 A.3d 344, 346 (Pa. Super. 2015); *In re Adoption of S.M.,* 816 A.2d 1117, 1122 (Pa. Super. 2003). Clear and convincing evidence is defined as testimony that is so "clear, direct, weighty[,] and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* A court examines whether the totality of the circumstances, including the individual circumstances of each case and all explanations offered by the parents, clearly warrants termination. *Id.* The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004).

This Court reviews a trial court's decision regarding involuntary termination of parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to whether the trial court's order is supported by competent evidence. *Id.*

The relevant subsections of sections 2511(a) and (b)[4] of the Adoption Act are as follows:

> (a)(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either

---

[4] 23 Pa.C.S. § 2511(a) (Grounds for involuntary termination); *id.* at 2511(b) (Other considerations).

has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(a)(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(a)(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(a)(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

(b) The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and (b).

A determination of whether the parent's conduct justified termination of parental rights under section 2511(a) is not relevant to a needs and welfare analysis under section 2511(b). *In re Adoption of R.J.S.,* 901 A.2d 502, 508 (Pa. Super. 2006). Moreover, a court only proceeds to address section 2511(b) if it first determines that the parent's conduct warrants termination pursuant to section 2511(a). *In re L.M.,* 923 A.2d 505, 511 (Pa. Super. 2007).

First, BCCYS argues that the trial court erred in failing to grant its petition for involuntary termination of parental rights with respect to Father under sections 2511(a)(1), (2), (5) and (8) because Father did not make a "serious attempt to demonstrate action or intent to be in a protective, parental capacity for the children" and continues to deny he participated in the abuse that occurred. Appellant's Brief, at 29.

BCCYS argues that it established by clear and convincing evidence that Father evidenced a settled purpose of relinquishing parental claim to Children, pursuant to section 2511(a)(1), when he failed to complete a court-ordered offender evaluation until *after* BCCYS filed a petition to terminate his parental rights on January 15, 2021. N.T. Termination Hearing, at 128, Exhibit 37; Appellant's Brief, at 31. Additionally, BCCYS points out that Father participated in only one recommended treatment session, which was actually one of Mother's sessions, following the evaluation. Appellant's Brief, at 15.

The evidence at the hearing does not clearly and convincingly establish that Father's conduct supported involuntary termination of his parental rights section 2511(a)(1). Indeed, BCCYS caseworker, Brooke Strausser, testified that for the most part, both Mother and Father have complied with all of BCCYS' requests:

> They both participated in mental health evaluations. Mother on December 10th of 2020, [F]ather on December 11th of 2020. They participated in drug and alcohol evaluations treatment at Berks Counseling Center. They were also court[-]ordered for urinalysis, which has been relatively consistent since [Treatment Alternatives for Safe Communities] . . . reopen[ed] in July of 2020, due to the pandemic.

N.T. Termination Hearing, 8/9/21, at 127-129; *see also* Trial Court Opinion, *supra* at 26. Additionally, Caseworker Strausser testified that, "[M]other and [F]ather have consistently attended visitation throughout the duration of this case." N.T. Termination Hearing, *supra* at 130. Moreover, Father testified that his offending parenting treatment had been scheduled during his visitation hours. *Id.* at 188.

BCCYS also argues that the repeated abuse by Father has caused Children to be without parental care necessary for their physical or mental well-being and these conditions will not be remedied because Father continues to be in denial "that he had a drug issue (despite smuggling urine in a condom to pass a urine test and despite positive drug screens), or any issues with Mother (despite them having a strained relationship around the time of [C]hildren's injuries)." Appellant's Brief, at 32. BCCYS has not provided clear

and convincing evidence that Father's conduct warrants termination under section 2511(a)(2).

BCCYS has failed to show that each element of section 2511(a)(2) has been met. *See In Interest of Lilly,* 719 A.2d 327, 330 (Pa. Super. 1998) (regarding inclusive nature of section 2511(a)(2)); Trial Court Opinion, *supra* at 34. Additionally, the court determined that Father has shown he is trying to provide proper and essential care for Children. *Id.* ("By all accounts, [Parents] are open to additional parent counseling."). Moreover, during a visit on January 15, 2020, Casework Strausser's case notes indicate, "[Father's] interaction with C.M.B continue to be positive. . . [C.M.B] appeared to enjoy [Father's] presence." N.T. Termination Hearing, *supra* at 133, 418; Exhibit 36.

While our Court has stated that "[W]hen a parent has demonstrated a continued inability to conduct his [or her] life in a fashion that would provide a safe environment for a child . . . the termination of parental rights is justified" under section 2511(a)(2)," *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010), here, Father testified that he has been working at East Penn Manufacturing for almost one year, making $1,000 per week, and he has secure housing. N.T. Termination Hearing, *supra* at 180. The trial court found Father's testimony credible. *M.G.*, *supra*.

Additionally, under sections 2511(a)(5) and (a)(8), BCCYS argues that the conditions that led to removal continue to exist because Father "did not acknowledge either way that abuse had occurred" even though he was

determined to be a perpetrator of abuse. Appellant's Brief, at 32. BCCYS relies on *In re: S.C.*, 247 A.3d 1097 (Pa. Super. 2021), to support this argument.

In *S.C.*, this Court found that the agency established grounds for involuntary termination of parental rights where parents did not admit their participation in the abuse of a six-week-old baby, who had bucket handle fractures on both of his legs as well as injuries on this mouth. There, neither parent could provide a plausible explanation as to the cause of the infant's injuries. The psychologist stated, "[T]here is no way to address any sort of underlying issue that would have contributed to these injuries without any[one] acknowledging what has happened" and, without a "plausible explanation" for the abuse, there was no way to ensure the baby's need for "essential parental care, control or subsistence necessary for his physical and mental well-being [will] be met." *Id.* at 1106.

However, here, Mother and Father both offered consistent testimony regarding the cause of the injuries. Trial Court Opinion, *supra* at 30. Father testified that the Children must have been injured in the jumper. N.T. Termination Hearing, *supra* at 192. Mother testified that, "When I [brought the Children to the hospital] I think it was because they both shared a jumper." N.T. Termination Hearing, *supra* at 160. Moreover, Caseworker Strausser testified that, "It has been consistently indicated that [] it was the jumper that caused the injury." N.T. Termination, *supra* at 141. Thus,

BCCYS' argument that the issues leading to the initial removal and placement of the Children have not been remedied is meritless.

Next, BCCYS argues that the trial court erred in failing to grant BCCYS' petition for involuntary termination of parental rights with respect to Mother under sections 2511(a)(1), (2), (5) and (8) because Mother was not compliant with ordered services, was emotionally detached from Children, and failed to acknowledge her role in the Children's injury as a founded perpetrator.

Under section 2511(a)(1), BCCYS argues that Mother evidenced a settled purpose of relinquishing her parental claim to her Children or failed to perform parental duties because "Mother did not show empathy at all for her [C]hildren who suffered femur fractures." Appellant's Brief, at 48. Specifically, "Mother struggled to engage with the [C]hildren and was overwhelmed unnecessarily; she also failed to demonstrate empathy when [C]hildren cried." Appellant's Brief, at 50.

However, BCCYS fails to demonstrate, by clear and convincing evidence that, under section 2511(a)(1) Mother's parental rights should be terminated. Mother's testimony shows she has taken steps to improve her parenting:

> BCCYS ATTORNEY: And would you agree that [C.M.B] tends to cry and almost scream when her diaper has to be changed.
>
> MOTHER: Yeah.
>
> BCCYS ATTORNEY: And what measures have you taken to make sure that you do not become frustrated if she responds in that way to a simple task?
>
> MOTHER: I calm my [C]hildren down. I put Cocomelon on. I am pretty sure that is in the visitation report. I put on nursery rhymes

for them. So yeah, I do take action in calming my [C]hildren down when it is time for her diaper to be changed.

N.T. Termination Hearing, *supra* at 173.

Under section 2511(a)(2), BCCYS argues that Mother's parental rights should be terminated because Mother has not been able to give a reasonable explanation as to the cause of her Children's femur fractures, nor has she recognized that her Children need protection. Again, BCCYS cites to *S.C., supra*, to support its argument.

However, again, BCCYS has not established every element of section 2511(a)(2). *Lilly, supra.* BCCYS Witness, Marlene Orr, a caseworker at Signature Family Services, testified, "I never stated that [M]other was not appropriate." N.T. Termination Hearing, *supra* at 113. Moreover, as discussed above, Mother and Father offered consistent testimony regarding what Mother believes to be the cause of the Children's injuries.

Regarding sections 2511(a)(5) and (8), BCCYS argues that the conditions that led to removal still exist. Specifically, BCCYS argues that Mother evidenced noncompliance with services and an inability to empathize with her Children because during treatment, Mother was asked how "things [] could have been done differently[]" in order to protect her Children, and Mother responded that she would "contact an attorney." Appellant's Brief, at 47 (citing N.T. Termination Hearing, *supra* at 20). BCCYS contends that this statement was dispassionate and shows that Mother's first response was to protect herself from perceived liability, rather than to protect her Children. BCCYS argues empathy is critical because it "demonstrates a level of

understanding of what the child has been through[] . . . [and] of being able to attach to that child and understand the child's experiences." Appellant's Brief, at 48 (citing N.T. Termination Hearing, **supra** at 20).

However, Caseworker Orr testified about Mother's interactions with C.M.D during a visit on June 8, 2021. On that date, C.M.B had been "fussy" all day, but Mother remained close to her throughout the visit and C.M.B was able to calm down. Specifically, Mother "held [C.M.B.] and redirected [C.M.B.] to an art easel." N.T. Termination Hearing, **supra** at 97. Additionally, Caseworker Orr also testified that: "And most recently I do need to point out that I have noticed with [M]other, she has been more engaged with the [C]hildren during the visitation with hands-on activities." **Id.** at 84. This testimony illustrates a bond between Mother and the Children, and that Mother has protective capacities.

Third, BCCYS argues that the trial court erred because, although required under section 2511(b), it did not give "primary consideration" to the developmental, physical, and emotional needs and welfare of the Children. Appellant's Brief, at 48. This argument is legally flawed. A court only considers section 2511(b) where it first determines that termination is appropriate under section 2511(a). **L.M.**, **supra** at 511 ("Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second party of the analysis pursuant to section 2511(b)"). As such, a section 2511(b) analysis is not statutorily required where, as here, we find competent evidence supporting

the trial court's finding that termination was not required under section 2511(a). ***A.R.***, ***supra***.

Fourth, BCCYS argues that the trial court erred by failing to allow the guardian *ad litem* (GAL), Robert Frankel, Esquire, to advocate for the Children's preferred outcome or wishes regarding the termination petition as required under 23 Pa.C.S.A. § 2313(a).[5] This argument, too, is meritless.

The transcript from the termination hearing shows that Attorney Frankel was given the opportunity to advocate for, engage in discussions regarding, and question witnesses on behalf of the Children. After Mother and Father testified, the court asked Attorney Frankel if there was any additional evidence:

> PARENT'S ATTORNEY: Nothing. No additional witnesses.

---

[5] Section 2313(a) provides:

> (a) **Child**. The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

> (a.1) – **Parent**. The court shall appoint counsel for a parent whose rights are subject to termination in an involuntary termination proceeding if, upon petition of the parent, the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship.

23 Pa.C.S. § 2313(a), (a.1).

COURT: Mr. Frankel?

GUARDIAN *AD LITEM*: No, thank you.

N.T. Termination Hearing, ***supra*** at 193.

Additionally, section 2313(a) does not create an affirmative duty on the part of the court to ensure that an appointed attorney performs his or her duties as required by law and the Rules of Professional Conduct. Trial Court Opinion, ***supra*** at 8. Even so, the trial court stated it is "of the strong opinion that Attorney Frankel performed his role as GAL in a professional and highly competent manner." ***Id.*** The record supports this determination.

In summary, the trial court did not abuse its discretion in concluding that Mother's and Father's parental rights should not be terminated. BCCYS did not show by clear and convincing evidence that either Mother's or Father's conduct fit within section 2511(a)(1), (2), (5) or (8). ***G.L.L., supra***. Additionally, a 2511(b) analysis was not statutorily required. Finally, the court did not refuse to allow the Children's GAL to perform his duties as advocate.

The record supports the trial court's findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. ***See A.R.***, ***supra***. Accordingly, we affirm.

Decrees affirmed.

Judge King joins the Memorandum.

Judge Nichols Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/13/2022