J-A08015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.J.M., IV, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2553 EDA 2024 |

Appeal from the Decree Entered August 29, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000079-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: R.A.L.,JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2554 EDA 2024 |

Appeal from the Decree Entered August 29, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000080-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: N.D.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2555 EDA 2024 |

Appeal from the Decree Entered August 29, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000081-2024

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED SEPTEMBER 4, 2025**

D.L. (Mother) appeals from the decrees,[1] entered in the Court of Common Pleas of Philadelphia County, Juvenile Division, involuntarily terminating her parental rights to her three minor children, E.J.M. (born 10/2021), and twins R.A.L. and N.D.L. (born 6/2016) (collectively, Children).[2] After review, we affirm based on the opinion authored by the Honorable Brian McLaughlin.

The Philadelphia Department of Human Services (DHS) became involved with Mother's family in June of 2016 due to reports of physical and verbal abuse, substance use, inappropriate housing, and lack of operable utilities and food in the home.  In May of 2021, DHS received a general protective services (GPS) report, alleging concerns about inappropriate discipline and unexplained bruises on Children.  Despite having a speech impediment, N.D.L. imitated being choked by Father.  The report was determined to be valid.  During the investigation, DHS determined that R.A.L. had also been physically abused by

_____

[1] Mother has filed three separate notices of appeal in compliance with **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018) ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed.").  **See** Pa.R.A.P. 341(a); **see also In re M.P.**, 204 A.3d 976, 981 (Pa. Super. 2019) (applying **Walker** holding in termination of parental rights/goal change appeal).  Pursuant to Pa.R.A.P. 513, this Court *sua sponte* consolidated the appeals at Nos. 2553 EDA 2024, 2554 EDA 2024, and 2555 EDA 2024.  **See** Order, 10/15/24.

[2] R.L. is the father of the twins, R.A.L. and N.D.L., and E.M. (Father) is the father of E.J.M.  Neither R.L. nor E.M. are parties to these appeals.

Father. On October 25, 2021, DHS placed Children in kinship care with G.F., a maternal cousin. The Children have remained with G.F. throughout the life of this case. G.F. is an adoptive resource for Children.

On April 5, 2022, Father was arrested on assault-related charges; the victims were R.A.L. and N.D.L.[3] On June 8, 2022, the trial court adjudicated Children dependent, finding Mother demonstrated parental inability and Children had been victims of child abuse by Father.

Over the following two years, Mother made some progress with her single case plan (SCP) objectives, which included mental health treatment, drug and alcohol therapy, domestic violence sessions, scheduled visits with Children, compliance with court orders, cooperation with Clinical Evaluation Unit (CEU), signing required releases, and allowing home assessment by Community Umbrella Agency (CUA). *See* N.T. Termination Hearing, 4/4/24, at 6-24. However, Mother failed to attend parenting classes in January and February of 2024, missed visits in February 2024, and had not obtained appropriate housing. As a result, Mother never reached the point of achieving reunification. In particular, despite Father's convictions for assault against Children, Mother maintained a relationship with him, believed that Father was not at fault, and continued to call Father during her visits with Children. Further, although N.D.L. had a profound fear of Father, Mother maintained the

_____

[3] Father was convicted on May 4, 2023 of various offenses related to these allegations and is serving a state prison term. *See* N.T. Termination Hearing, 4/4/24, at 77; Termination Hearing, 8/29/24, at 51. *See also* DHS Exhibit 7.

relationship and has never expressed concern about Father's physical abuse toward Children. *Id.* at 162, 230.

On February 15, 2024, DHS filed a petition to involuntarily terminate Mother's parental rights pursuant to subsections 2511(a)(1),(2), (5), (8), and (b) of the Adoption Act.[4]  The court held a termination hearing on August 4, 2024 and August 29, 2024.  Following the termination hearings,[5] the court found that DHS presented clear and convincing evidence to support terminating Mother's parental rights under 23 2511(a) (1), (2), (5), (8), and (b).[6]  Mother filed this timely appeal.  Both Mother and the trial court have complied with Pa.R.A.P. 1925.

_____

[4] 23 Pa.C.S.A. §§ 2101-2938.

[5] Children were represented by guardian ad litem (GAL), Sydney Groll, Esquire, and attorney Emily Cherniak, Esquire, at the termination hearing. *See* 23 Pa.C.S.A. § 2313(a) (children have statutory right to counsel in contested involuntary termination proceedings) and *In re K.R.*, 200 A.3d 969 (Pa. Super. 2018) (en banc), *but see In Re: T.S.*, *E.S.*, (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian ad litem representing the child's best interests can also represent the child's legal interests.").  On appeal, Children, through their GALs, Sydney Groll, Esquire, and Victoria A. Geddis, Esquire, have filed a Participant's Brief requesting this Court affirm the decrees terminating Mother's parental rights.

[6] These subsections provide for termination of parental rights if:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

*(Footnote Continued Next Page)*

- 4 -

Mother raises the following issues:

1. Whether the trial court committed reversible error, when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under [section] 2511(a).

_____

. . .

(2) The repeated and continued incapacity, abuse, neglect[,] or refusal of the parent has caused the child to be without essential parental care, control[,] or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied by the parent.

. . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time[,] and the termination of the parental rights would best serve the needs and welfare of the child.

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist[,] and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8).

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of [Children] as required by [section] 2511(b).

3. Whether the trial court erred because the evidence was overwhelming and undisputed that Mother demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with [Children].

Appellant's Brief, at 4.

Our standard of review for an order involuntarily terminating parental rights is well established.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted). Involuntary termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [s]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [s]ection 2511(b): determination of the

- 6 -

needs and welfare of the child under the standards of the best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

"The standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *In re Adoption of G.L.L.*, 124 A.3d 344 (Pa. Super. 2015) (quoting *In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (additional citations omitted)). *See also In re Z.P.*, 994 A.2d 1108, 1116 (Pa. Super. 2010). A child has a right to a stable, safe, and healthy environment in which to grow, and the "child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re I.J.*, 972 A.2d 5, 9 (Pa. Super. 2009).

To affirm the trial court's termination of Mother's parental rights, we need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). Accordingly, without considering the court's determinations under subsections (a)(1), (a)(2), or (a)(5), we shall proceed to review whether the court erred in terminating Mother's parental rights to the Children under section 2511(a)(8) ("The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of the removal or

placement, the conditions which led to the removal or placement of the child continue to exist[,] and termination of parental rights would best serve the needs and welfare of the child."). In addition to examining the behavior of the parent, "the analysis under subsection 2511(a)(8) accounts for the needs of the child[.]" *In re C.L.G.*, 956 A.2d 999, 1008-09 (Pa. Super. 2008).

CUA case manager, Cheryl Wellington, testified as to her concerns about Mother's protective capacity. *See* N.T. Termination Hearing, 8/4/24, at 106, 161-62, 182. In particular, she testified that Mother has never expressed any concern about Father's physical abuse toward Children and told her at one point, "my children are liars, they make up stories." *Id.* at 183. Despite Father's convictions, Mother stated she does not believe Father committed child abuse. *Id.* at 19.

Wellington also testified that Children are thriving and progressing in G.F.'s care, that Children have a strong bond with G.F., particularly E.J.M., who was three years old at the time of the hearing and has been in G.F.'s care since he was two days old. *Id.* at 16-23, 248. Wellington opined that Children did not have a healthy bond with Mother, and it would be in Children's best interests to terminate Mother's parental rights and free them for adoption by G.F. *Id.* at 21-25, 222-26, 229. The court found Wellington's testimony credible. *See* N.T. Termination Hearing, 8/29/24, at 56.

After a comprehensive review of the certified record, the parties' briefs on appeal, and the relevant case law, we have concluded that the trial court opinion adequately disposes of Mother's issues on appeal. We, therefore, rely

upon the opinion, authored by Judge McLaughlin, to affirm the decrees involuntarily terminating Mother's parental rights to Children pursuant to 23 Pa.C.S.A. §§ 2511(a)(8) and (b).  *See* Trial Court Opinion, 12/2/24, at 20-21 (trial court stating Wellington, case manager for two and one-half years, testified credibly with respect to Mother's ability to keep Children safe and that Mother's testimony was "self-serving," she took "no accountability for her actions that led to [C]hildren being removed from her home[,] and that, despite completing some of her SCP objectives, testimony offered by both Wellington and Mother "proved [] that conditions that brought [C]hildren into care had not been remedied.").  *See also* N.T. Termination Hearing, 8/29/24, at 48, 54  (trial court stating, at conclusion of hearing, that DHS "has met its burden by clear and convincing evidence as to [] 2511(a)(8) and (b). . . . [and] that there's an ongoing relationship, clearly, between [Mother] and [Father,] which increases and continues the [c]ourt's concerns for [Mother's] protective capacity for all three of her children."); *id.* at 55-56 (court found credible Wellington's testimony that Children did not have healthy bond with Mother, that Children had healthy bond with G.F., that G.F. provides "love, protection[,] and support" and, with respect to E.J.M., G.F. is the only mother E.J.M. has known.); *id.* at 56-57 (court stating "Wellington's testimony is credible as to [no] irreparable harm if [M]other's rights were terminated [to] [C]hildren[,]" and court finds "it's in the best interest of [Children] to change the goal to adoption.").

Thus, we conclude, based on competent evidence in the record, the trial

court's decision to involuntarily terminate Mother's parental rights was neither an abuse of discretion nor an error of law. **See *T.S.M.*, *supra*** (trial court's decision should not be reversed merely because record would support different result).

We direct the parties to attach a copy of Judge McLaughlin's opinion in the event of further proceedings in the matter.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/4/2025